IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BANCREDITO INTERNATIONAL BANK CORPORATION
Plaintiff

vs

DATA HARDWARE SUPPLY, INC.; FRANCO D'AGOSTINO; DAYCO TELECOM C.A.
Defendants

CIVIL 18-1005CCC

**OPINION AND ORDER**

Before the Court is plaintiff Bancrédito International Bank Corporation's ("Bancrédito") Motion for Summary Judgment (**d.e. 28**) against defendants Data Hardware Supply, Inc. ("DHS") and Franco D'Agostino filed April 30, 2019, and defendants' Opposition (d.e. 32). Plaintiff alleges that defendants have defaulted on a loan agreement, in which DHS is the mortgagor and D'Agostino is the guarantor. Defendants admit the existence and validity of the relevant loan agreement and accompanying documents, and that defendants have failed to repay the loan in full. However, defendants contest liability and the amount owed on three grounds.

**I. UNDISPUTED FACTS**

1. On February 5, 2015, plaintiff Bancrédito, as lender, and co-defendant DHS, as borrower, executed a Personal and Corporate Collateralized Loan Agreement ("Loan Agreement"), whereby Bancrédito delivered the sum of $1,500,000.00 to DHS, to be repaid with variable interest, within a 12-month period.

2.     To introduce Bancrédito into lending the money, Mr. Franco D'Agostino ("Mr. D'Agostino"), Shareholder and President of the Board of Directors of DHS, executed a Guaranty of Payment, in his personal capacity, for the joint and several and unconditional payment of all the sums owed under the Loan Agreement.

3.     On the same date, co-defendant DHS executed a Promissory Note for value received, agreeing to pay to the order of Bancrédito the principal sum of $950,000.00, together with variable interests and other fees.

4.     On the next day, co-defendant DHS executed a Promissory Note for value received, agreeing to pay to the order of the plaintiff the principal sum of $550,000.00, together with variable interests and other fees.

5.     DHS failed to repay the loan according to the terms of the Loan Agreement.

6.     On November 17, 2017, Bancrédito's counsel sent DHS and Mr. D'Agostino a letter of demand requesting $1,527,302.25, to be paid within the next seven (7) days.

## II.    STANDARD OF REVIEW

The standard applicable to summary judgment motions was summarized by the Court of Appeals in <u>Johnson v. University of Puerto Rico</u>, 714 F.3d 48, 52 (1st Cir. 2013):

> Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Cox v. Hainey</u>, 391 F.3d 25, 29 (1st Cir. 2004). We look to the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits in making the determination. <u>Thompson [v. Coca-Cola</u>

Co.], 522 F.3d [168] at 175 [(1st Cir. 2008)]. A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Id. (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation mark omitted). A fact is material if it has potential to determine the outcome of the litigation. Maymí v. P.R. Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008).

Once a properly supported motion has been presented, where a nonmovant bears the burden of proof on an issue, the nonmovant must point to competent evidence and specific facts to defeat summary judgment. Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). The evidence proffered must be "significantly probative of specific facts," Pérez v. Volvo Car Corp., 247 F.3d 303, 317 (1st Cir. 2001), and the "mere existence of a scintilla of evidence" in support of the nonmovant's position is insufficient, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. ANALYSIS

#### A. Implicit Covenant

Defendants first argue that they are excused from payment by an "implicit covenant" in the loan agreement. The alleged implicit covenant conditions DHS's obligation to repay Bancrédito on whether Dayco, a third-party company, successfully makes payments to DHS under Contract No. PSF-12-0830. Defendants do not cite any case law on implied covenants from the First Circuit of Puerto Rico courts; an exhaustive search reveals that these courts have only identified the implied covenant of "good faith and fair dealing."

CIVIL 18-1005CCC                4

Even assuming, *arguendo*, that such an implied covenant can be found under Puerto Rican law, defendants offer no evidence to support such a finding. Defendants point only to the following provision of the contract:

> Collateral: The loan will be 100% collateralized by the assignment of 50% (fifty percent) of each of the payments under the Contract No. PSF-12-0830 dated October 15, 2012, and signed December 12th, 2012 and February 7th, 2013 between DATAHARDWARE SUPPLY and DAYCO TELECOM C.A., also known as DAYCO HOST. In addition to the above mentioned guarantee, Mr. Franco D'Agostino Mancinelli, in its personal character, will also be Guarantor for this loan.

(d.e. 28-1). This provision explicitly states that plaintiff is entitled to the payments made by Dayco on Contract No. PSF-12-0830 if defendants are unable to pay the loan, and refers to said collateralization as a "guarantee" like the one made by co-defendant D'Agostino. Nothing in the contract suggests that DHS's obligations to Bancrédito are conditioned on whether Dayco makes its payments.

The Court finds that a reasonable jury could not find an implicit covenant based solely on the collateralization provision of the loan agreement. Accordingly, the Court rejects defendants' first defense.

B. *Force Majeure*

Defendants also argue that they are excused from payment by *force majeure* due to the current "unprecedented political and economical crisis" in Venezuela. "[P]erformance of a contractual obligation may be excused upon the occurrence of a force majeure, that is, an 'act of God' or an unforeseeable event that prevents performance. 31 L.P.R.A. § 3022. A force majeure is often a natural phenomenon, such as a natural disaster, but unforeseeable human events, such as war, may also constitute force majeure. O.E.G. v. Rivera,

153 D.P.R. 184, 192 (2001)." La Carpa Corp. v. Am. Spaceframe Fabricators, LLC, 2014 WL 12889278, at *6 (D.P.R. Jan. 25, 2014). The crisis in Venezuela may be the type of situation that gives rise to *force majeure*.

However, the Court need not reach this question, as defendants have not provided any evidence that the events in Venezuela prevent DHS, a company based in Miami, Florida, and D'Agostino, a Florida resident, from paying their loan obligations. While Dayco, which is organized under the laws of Venezuela, may have difficulty making payments to DHS, the Court has held, *supra*, that DHS's obligation to pay the plaintiff is not contingent on Dayco's payments. Accordingly, the Court rejects the defense of *force majeure*.

C. Amount Owed

Defendants' final argument is a challenge not to liability but to the amount of money owed to plaintiff under the contract. Defendants allege that Julio Herrera Velutini, CEO of Bancrédito, signed the following agreement ("Velutini Agreement"):

> I, Julio Herrera-Velutini, holder of identification card No. 10384888 in full knowledge of my faculties [sic] hereby declare that as a consequence of a personal debt with Franco D'Agostino, holder of identification card No. 1738012, I pledge to fully settle the promissory note for a sum of $432,000.00 in favor of BANCREDITO dated 12-29-2014 with maturity on date of promissory note 12-29-2014.

Defendants submitted a certified translation of the Velutini Agreement, but no original copy in the Spanish language.

The Velutini Agreement is dated December 29, 2014. This date is dispositive, as the Loan Agreement between Bancrédito and DHS and the accompanying promissory notes were executed on February 5, 2015.

CIVIL 18-1005CCC          6

Accordingly, the Velutini Agreement could not have been referring to the promissory notes executed in concert with the Loan Agreement, as said notes did not yet exist.

Defendants also argue that payments made in December 2014 and January 2015 should be applied to the amount owed on the Loan Agreement. Again, any such alleged payments were made before the date of the Loan Agreement, and are therefore not relevant.

## IV. CONCLUSION

There is no genuine dispute of material fact as to defendants' liability to plaintiff. Accordingly, the Court GRANTS plaintiff's Motion for Summary Judgment. Judgment shall be entered by separate order.

SO ORDERED.

At San Juan, Puerto Rico, on September 13, 2019.

S/CARMEN CONSUELO CEREZO
United States District Judge